IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ERIKA POTTER, )
)
Plaintiff, )
)
v. ) Civil Action No. 07-0600
)
COMSTOCK HOMES OF WASHINGTON, )
LC, )
)
Defendant. )

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion for Summary Judgment. Plaintiff's Amended Complaint alleges Defendant engaged in retaliation and wrongful discharge in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., based on Plaintiff's pregnancy. When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. See Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1996) (en banc). We review the facts with this principle in mind.

Defendant Comstock Homes of Washington, LC, builds, markets, and sells single-family homes, townhouses, and condominiums in the Washington, D.C. metropolitan area. Plaintiff Erika Potter was employed by Defendant from September 2000 to July 2006,

serving as Sales Manager since 2002. Plaintiff's responsibilities as Sales Manager included: remaining on-site during working hours in order to meet with prospective buyers, recording prospective buyer traffic, maintaining model units in presentable condition, coordinating repairs, and supervising and training assistants. Additionally, as Sales Manager, Plaintiff was expected to sell at least one unit per month; failure to do so was grounds for termination. This requirement is clearly described in Defendant's Personnel Policies, a copy of which Plaintiff signed on November 4, 2002.

In late 2005 and early 2006, Defendant hired professional shoppers to pose as prospective buyers, interact with Plaintiff, and generate reports describing Plaintiff's performance. Defendant identified a number of performance deficiencies in Plaintiff as a result of these reports. In particular, the first report indicated that Plaintiff was dressed unprofessionally, failed to exchange names with the shopper, failed to tour the model home with the shopper, failed to offer the shopper a registration card to fill out, and failed to make a follow-up appointment with the shopper. Plaintiff's second-level supervisor, Gregory Benson, wanted to terminate Plaintiff's employment immediately, but was convinced not to by Plaintiff's direct supervisor, Daniel Martin. The second shopping report noted slight improvement but indicated that Plaintiff again

2

failed to introduce herself, failed to discuss floor plans, failed to discuss community benefits, and failed to give the contact information of Defendant's preferred lender.

In January 2006, as part of her performance review, Plaintiff completed a self-evaluation form in advance of her meeting with Martin. Plaintiff listed herself as meeting expectations in most areas, but as failing to meet expectations in the following areas: completing traffic registration information, getting prospective buyers' contact information, letting management know if the site was not presentable, following up with buyers regarding loan status, managing time, being organized, and keeping the work area neat and clean. Plaintiff met with supervisors Benson and Martin on January 26, 2006, at which time Benson informed Plaintiff that he had seriously considered terminating Plaintiff as a result of her first shopping report. Benson and Martin then reviewed the areas in which Plaintiff needed improvement.

When Plaintiff asked Martin which site she would be assigned to next, Martin told her that he was thinking about assigning her to Carter Lake, an upcoming site that, at that time, was projected to be desirable and lucrative. Ultimately, on February 8, 2006, Benson hired Michael Hummer, not Plaintiff, to be the sales manager at Carter Lake.

In early 2006, Plaintiff learned that she was pregnant.

Plaintiff informed a co-worker, Ms. Inga Scobie, of her pregnancy in early February. A few weeks later, in mid to late February, Scobie announced Plaintiff's pregnancy at a meeting in which Benson and Martin were present.

In February and March of 2006, Defendant conducted a "fire-sale" at its Blooms Mill site, where Plaintiff was Sales Manager. By significantly reducing home prices, Defendant hoped to increase prospective buyer traffic and sell the remaining units at Blooms Mill before the end of the quarter. Ultimately the sale was successful in selling a large number of units, but it resulted in substantially diminished profits for Defendant. Though Plaintiff had sold only four units at Blooms Mill from November 2005 through the start of the sale in 2006, Plaintiff sold over twenty-five units during the sale at Blooms Mill.

During the middle of the sale, from February 24 to February 26, Plaintiff took a weekend vacation that had been planned several months in advance and with the knowledge of her supervisors. Because of Plaintiff's absence and the expected increase in traffic at Blooms Mill as a result of the sale, Benson and Martin assigned two additional sales managers to cover Plaintiff's job site during her absence. These substitute sales managers obtained contracts on four units during the weekend. For each of these sales, Defendant paid Plaintiff, who was absent during the weekend, $500 for any post-sale, pre-settlement

closing services she would have to perform. Plaintiff thereafter expressed her dissatisfaction, via an e-mail to Benson, with not receiving her usual commission for these sales, which would have been larger than $500. In an e-mail to Benson, Martin indicated he thought Plaintiff's e-mail was disrespectful and observed that "maybe we just don't have a place for her" after the settlements were to be completed.

On March 16, 2006, Plaintiff informed Martin and Benson that she had sold the last units at Blooms Mill. After the final sales contracts were written, Martin and Benson transferred Plaintiff's sales assistant to a different site that was continuing to sell units and did not have a sales assistant. One week later, Plaintiff's sales assistant was transferred back to Plaintiff's site.

In early April 2006, Martin and Benson informed Plaintiff that she was being assigned to The Villas at Countryside ("Countryside"), an apartment-to-condo conversion project where Plaintiff would be Sales Manager. Plaintiff told Martin she thought she was going to be assigned to Carter Lake, to which Martin responded: "That was before you were pregnant." On April 10, Plaintiff complained to Michele Jackson, Vice President of Human Resources, that she was being assigned to Countryside instead of Carter Lake because she was pregnant. Jackson thereafter conducted an investigation into the matter,

interviewing Benson and Martin regarding Plaintiff's assignment. Jackson concluded that Plaintiff's assignment to Countryside was not based on her pregnancy, but on legitimate, non-discriminatory reasons, namely, that Benson and Martin had already hired Michael Hummer on February 8 to be the sales manager at Carter Lake.

From April to July 2006, Plaintiff failed to sell a single unit at Countryside. During this period, Plaintiff had a series of disagreements with Benson and Martin over the most effective way to sell the properties at Countryside. Plaintiff contends that these disagreements constituted to a campaign aimed at punishing her for becoming pregnant and reporting Martin's discriminatory comment about her pregnancy. Defendant, on the other hand, contends that these disagreements were a result of Plaintiff's continuing performance deficiencies, which ultimately led to her termination.

While at Countryside, Plaintiff told Benson and Martin that the units "needed some work done" in order for her to sell them more effectively, but Plaintiff failed to explain exactly what work needed to be done and to which units. Benson and Martin denied Plaintiff's request to improve the units. Following Plaintiff's termination, Martin asked the site's Superintendent to clean and repair some of the units. This came after Plaintiff's replacement sent to Martin a detailed inventory of the remaining units and the specific repairs each unit needed.

6

On multiple occasions, Plaintiff requested that Benson and Martin lower the prices of the units and offer more incentives to prospective buyers. Benson denied most of these requests out of fears such price reductions would render the sales unprofitable. However, on one occasion, Benson agreed to offer free flat screen televisions to condo purchasers, an incentive Plaintiff had requested. Benson did, in fact, reduce the prices of the Countryside units soon after Plaintiff was terminated.

Plaintiff also had several disagreements with Benson and Martin about advertising. First, Defendant mailed a postcard to the public, which advertised the units for sale at Countryside. Plaintiff objected to the postcard insisting that it was missing several necessary disclaimers. Second, Plaintiff complained that Martin had allowed Countryside's listing in the Metropolitan Regional Information Systems, Inc. ("MRIS") to lapse. Martin checked MRIS, found Countryside's listing, and responded to Plaintiff indicating that Countryside was listed. Third, Plaintiff, along with several other sales managers, requested that Defendant spend more on advertising for Countryside. Benson and Martin refused Plaintiff's request for more advertising, based on budget and profitability concerns. Fourth, Defendant once advertised an open house at Countryside without notifying Plaintiff, not allowing her to adequately prepare and causing her to be absent.

On June 19, 2006, Martin met with Plaintiff to discuss her performance. Martin informed her that, on at least two occasions, he had found Plaintiff absent from Countryside during work hours for what he considered inappropriately long periods of time. Martin also addressed her failure to sell units. Plaintiff told Martin that she had not written any contracts because she had not met any prospective buyers who she thought would qualify for a loan. Martin disagreed and indicated to Plaintiff that this was not her role, but rather, the role of the lender. Martin also pointed out that he believed that Plaintiff was continuing to under-report traffic of prospective buyers at Countryside.

In July 2006, Plaintiff was observed by another professional shopper who generated a shopping report which appeared to show substantial improvement in Plaintiff's performance. However, this shopping report, unlike the prior two shopping reports, was not produced by or with the knowledge of Defendant. Instead, this report was produced by an advertising firm that, at the time, was pitching its services to Defendant. Benson and Martin did not see this report until Plaintiff's lawsuit was filed.

On July 20, 2006, Martin visited Countryside and found Plaintiff's sales office and model homes to be in an unacceptable condition. Papers were stacked haphazardly throughout the office and numerous lights in the model units were burned out. On July

21, 2006, Martin met with Benson and recommended Plaintiff's termination. Benson agreed and Plaintiff was terminated that day.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue exists when there is sufficient evidence on which a reasonable jury could return a verdict in favor of the non-moving party. See id. Mere speculation by the non-moving party "cannot create a genuine issue of material fact." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985); see also Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Plaintiff alleges Defendant discriminated and retaliated against her in violation of Title VII, based on Plaintiff's pregnancy. Absent direct evidence of discrimination or retaliation, Plaintiff must establish a prima facie case of unlawful discrimination. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Plaintiff may establish a prima facie case by showing that (1) she is a member of a protected class (for discrimination claims) or that she engaged in protected activity (for retaliation claims); (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met the employer's legitimate expectations at the time of the adverse action; and (4) the position remained open or was filled by a similarly qualified individual outside the protected class. See Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006). To establish a prima facie case of retaliation, Plaintiff must also show that there was a causal link between the protected activity and the adverse employment action. See Holland, 487 F.3d at 218; Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004).

If Plaintiff is able to establish a prima facie case of discrimination, the burden shifts to Defendant, who must "articulate some legitimate, nondiscriminatory reason" for the

adverse employment action suffered by the employee. <u>Burdine</u>, 450 U.S. at 253 (quoting <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)). If Defendant is able to proffer evidence to show a legitimate reason for the adverse employment action, the burden shifts back to Plaintiff to show that Defendant's articulated reasons are mere pretext for unlawful discrimination. <u>Id.</u>

Plaintiff contends that Defendant discriminated against her on several occasions before Plaintiff's complaint to Jackson on April 10, 2006. First, Plaintiff contends that Defendant discriminated against her by allowing two substitute sales managers to make sales at her site while she was on vacation. This incident cannot support Plaintiff's discrimination claim because, even if Plaintiff could establish a <u>prima facie</u> case of discrimination, Defendant has offered legitimate, non-discriminatory reasons for assigning other sales managers to Plaintiff's site while Plaintiff was absent, which Plaintiff has failed to rebut. At the time of this incident, Plaintiff's site was experiencing increased customer traffic due to the "fire sale" Defendant was conducting. Additionally, this incident took place over a weekend which was expected to bring even more customer traffic. Plaintiff's sales assistants, who remained at the site despite Plaintiff's absence, did not have the authority to write up sales contracts for buyers interested in purchasing

11

property. Thus, Defendant legitimately wanted to ensure that someone with the authority to write sales contracts on behalf of the company was present and available during working hours at Plaintiff's site. Ultimately, the substitute sales managers obtained four signed contracts for the sale of units at Plaintiff's site during her absence. Because Defendant's decision to assign the substitute sales managers was supported by legitimate, non-discriminatory reasons, this decision does not support Plaintiff's discrimination claim.

Second, Plaintiff contends that the one-week transfer of her sales assistant was a result of unlawful discrimination. This transfer does not support Plaintiff's discrimination claim because it does not rise to the level of an adverse action. An adverse action is a discriminatory act which "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (internal quotations omitted). Here, Plaintiff's employment was not adversely affected by the one week transfer of her sales assistant. There is no evidence that Plaintiff lost any sales or had her promotional opportunities reduced by the transfer. Additionally, even if the transfer could be construed as an adverse action, Defendant has offered legitimate, non-discriminatory reasons for the transfer, namely, that Plaintiff had completely sold out her site and Defendant

determined that the sales assistant was better utilized at another site.

Third, Plaintiff contends that she was transferred to Countryside instead of Carter Lake as a result of discrimination based on her pregnancy. Plaintiff's transfer to Carter Lake does not support Plaintiff's discrimination claim. Although the Fourth Circuit has not addressed this issue, several other circuits have held that in order for a plaintiff to establish a prima facie case for pregnancy discrimination, the plaintiff must present evidence that the employer had actual knowledge of the pregnancy at the time of the adverse employment action. See Prebilich-Holland v. Gaylord Entertainment Co., 297 F.3d 438, 444 (6th Cir. 2002); Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578, 581 (3d Cir. 1996); Sweeney v. Marc Global, Inc., No. 3:06cv182, 2008 WL 313618, *10 (W.D.N.C. Feb. 4, 2008). Though Martin appeared to indicate to Plaintiff that the decision to transfer her to Countryside was connected to her pregnancy, the evidence presented indicates that neither Martin nor Benson knew of Plaintiff's pregnancy at the time they decided not to transfer Plaintiff to Carter Lake. The earliest Martin and Benson could have been informed of Plaintiff's pregnancy was mid to late February, when Inga Scobie announced Plaintiff's pregnancy in a meeting with Benson and Martin. However, their decision to hire Michael Hummer, instead of Plaintiff, to be the sales manager at

13

Carter Lake occurred on February 8, 2006. Because the evidence indicates that neither Martin nor Benson knew of Plaintiff's pregnancy at the time they decided not to assign her to Carter Lake, Plaintiff has failed to establish a prima facie case of discrimination based on Plaintiff's pregnancy.

Additionally, even if the evidence indicated that Martin and Benson knew of Plaintiff's pregnancy at the time they made their decision not to transfer her to Carter Lake, Plaintiff has failed to demonstrate that the transfer to Countryside was an adverse employment action. As the Fourth Circuit has stated:

> The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action. A reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect. [A]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position.

Booz-Allen & Hamilton, 368 F.3d at 376 (internal quotations and citations omitted). Plaintiff has failed to produce evidence that her transfer to Countryside instead of Carter Lake had a "significant detrimental effect" on her employment and, thus, has failed to establish a prima facie case of discrimination based on her transfer.[1]

---

[1] Insofar as Martin's statement to Plaintiff ("[t]hat was before you were pregnant") can be construed as direct evidence of discrimination, this statement cannot serve as the basis for

14

Next, Plaintiff contends that Defendant discriminated and retaliated against her following her meeting with Jackson on April 10, 2006. In particular, Plaintiff alleges that Defendant interfered with her job performance by conducting a "campaign of discriminatory acts calculated to result in [Plaintiff's] termination and [to] hinder her from performing her job duties and selling homes." This interference included Defendant's refusal to repair and improve the units, to lower prices, to offer better incentives, to increase advertising spending, to properly keep up with mailings and MRIS listings, and to notify Plaintiff of all open houses at her site. Plaintiff also alleges that Defendant's unlawful discrimination and retaliation were the cause of her termination.

Plaintiff has failed to demonstrate that any of these allegedly discriminatory or retaliatory acts support her claims

---

Plaintiff's claim because Defendant's decision to transfer Plaintiff to Countryside instead of Carter Lake cannot be considered an adverse employment action. Although a plaintiff may present direct evidence of discrimination as an alternate method of avoiding summary judgment, the plaintiff must still establish that the employer took an adverse employment action against the Plaintiff. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005) ("A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision"). Because, for the reasons stated above, Defendant's decision to transfer Plaintiff to Countryside cannot be considered an adverse employment action, Plaintiff's claim fails under the direct evidence method of proof.

under Title VII. First, Plaintiff has failed to establish a <u>prima facie</u> case for either discriminatory or retaliatory termination because Plaintiff was not performing her job duties at a level that met Defendant's legitimate expectations at the time of her termination. Plaintiff's unsatisfactory performance while employed by Defendant is well documented. On at least three occasions prior to her termination in July 2006, Benson and Martin discussed terminating Plaintiff. The first of such discussions occurred several months before Plaintiff became pregnant. Benson and Martin were dissatisfied with Plaintiff's poor performance as reflected in the shopping reports and her complaints, which Benson and Martin viewed as unreasonable and excessive, about the use of substitute sales managers when Plaintiff was absent. Furthermore, Plaintiff failed to sell any units during the four months she was Sales Manager at Countryside, a clear grounds for termination based on Defendant's Personnel Policies. This unrebutted evidence makes clear that Plaintiff has failed to establish a <u>prima facie</u> case for discriminatory or retaliatory termination.[2]

---

[2] Plaintiff cannot rely on the third shopping report, prepared by the advertising firm, because it is hearsay that does not fall within the business records exception to the hearsay rule. <u>See</u> Fed. R. Evid. 803(6). It is clear that this shopping report was not prepared by Defendant. As at least one court has stated, "[w]hen the source of the information in the business record is an outsider, the only way to save the record from the jaws of the hearsay exclusion is to establish that the business recipient took precautions to guarantee the accuracy of the given

Second, Plaintiff has failed to establish a *prima facie* case for discrimination or retaliation based on Defendant's alleged interference with Plaintiff's job performance because Plaintiff has failed to establish that Defendant's conduct constituted an adverse employment action. As the Supreme Court has held, "an employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work that all employees experience." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Here, the interfering acts Plaintiff complains of did not adversely affect the terms, conditions, or benefits of her employment. See Booz-Allen & Hamilton, 368 F.3d at 375. Rather, the acts Plaintiff complains of fall into two categories: business decisions regarding issues such as pricing and advertising that Plaintiff disagreed with and minor slights caused by poor communication. Neither of these types of

---

information." Rambus, Inc. v. Infineon Technologies AG, 348 F. Supp. 2d 698, 702 (quoting United States v. Pendergrass, 47 F.3d 1166, 1995 WL 56673, *5 (4th Cir. 1995)). No such precautions have been presented here and, in fact, Defendant determined that shopping reports from this advertising firm were generally not accurate.

Furthermore, even if this shopping report were admissible, it would not change the fact that Defendant still had legitimate non-discriminatory reasons for Plaintiff's termination, including Plaintiff's failure to sell any units in her four months at Countryside, excessive absences, complaints regarding commissions, and failure to properly maintain the office and model units.

17

activities rises to the level of adverse employment actions. Furthermore, these activities and decisions were not directed to Plaintiff alone, but rather were applied to other employees who were not pregnant. For instance, other, non-pregnant sales managers had requested price reductions, increased incentives, and increased advertising and were denied. Other non-pregnant sales managers had even complained about Defendant's failure to keep up with MRIS listings and failure to notify the sales managers of open houses at their site. Thus, Defendant's allegedly interfering acts do not rise to the level of an adverse action.

Even if Plaintiff could establish a <u>prima facie</u> case for discrimination or retaliation based on Defendant's alleged interference, Defendant has put forth unrebutted evidence that Defendant's actions were based on legitimate, non-discriminatory reasons. As the Fourth Circuit has stated, "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." <u>Jiminez v. Mary Washington College</u>, 57 F.3d 369, 377 (4th Cir. 1995). Plaintiff's conflicts with Defendant involved issues such as the price of the units, the size of incentives, the methods of advertising and the maintenance of the property. These issues all involve the business judgment of Defendant and, as indicated above, were not directed at Plaintiff alone. Furthermore, Defendant's decision to improve the units after

Plaintiff was terminated was based on legitimate reasons, namely, Plaintiff's replacement's significantly more detailed assessment of the work needed on each unit, compared to Plaintiff's general assessment that the units "needed some work done." Thus, because Defendant's post-complaint activities were based on legitimate, non-discriminatory reasons, these activities do not support Plaintiff's claims for unlawful discrimination and retaliation.

Therefore, for the reasons stated above, Defendant is entitled to summary judgment. An appropriate order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
June 26, 2008